IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JOE DONATHAN,                      )
                                   )
                Plaintiff,         )
                                   )
     v.                            )    1:17CV821
                                   )
NANCY A. BERRYHILL,                )
Acting Commissioner of Social      )
Security,                          )
                                   )
                Defendant.         )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Joe Donathan, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.)  Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum), Docket Entry 14 (Defendant's Memorandum)).  For the reasons that follow, the Court should remand this matter for further administrative proceedings.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging an onset date of July 1, 2011.  (Tr. 188-202.)  Upon denial of those applications initially (Tr. 60-87, 118-23) and on reconsideration (Tr. 88-117,

124-27, 130-34), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 137-38). Plaintiff, who proceeded through counsel, Plaintiff's daughter, and a vocational expert ("VE") testified at the hearing. (Tr. 27-59.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 186-87, 296-97), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since July 1, 2011, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: degenerative disc disease; major depressive disorder, recurrent, moderate to severe; generalized anxiety disorder; and borderline intellectual functioning.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with exceptions: He can walk for two hours. He requires the use of an assistive device. He can occasionally reach overhead, bilaterally. He can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can

2

occasionally balance. He can occasionally stoop, kneel, crouch, or crawl. He is limited to hearing and understanding simple, oral instructions and to communicating simple information. He can avoid ordinary hazards in the work place, such as boxes on the floor, doors ajar, etc. He is limited to occasional exposure to unprotected heights and moving mechanical parts. He can occasionally operate a motor vehicle. He is limited to performing simple, routine and repetitive tasks. He cannot perform work at a production rate pace. He can make simple, work-related decisions. He can occasionally respond appropriately to coworkers and the public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from July 1, 2011, through the date of this decision.

(Tr. 13-20 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Even given those limitations, the Court should remand this case for further administrative proceedings.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

7

### B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's RFC does not match the VE hypothetical upon which [the ALJ's] Step 5 finding is based" (Docket Entry 12 at 4 (bold font and single-spacing omitted)); and

2) "[t]he ALJ erred in his assessment of the medical opinion evidence" (id. at 7 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 8-17.)

#### 1. Concordance of RFC and Hypothetical Question

In Plaintiff's first issue on review, he contends that "[t]he ALJ's RFC does not match the VE hypothetical upon which [the ALJ's] Step 5 finding is based." (Docket Entry 12 at 4 (bold font and single-spacing omitted).) In particular, Plaintiff asserts that "the ALJ found [in the RFC] that [Plaintiff] could 'occasionally respond appropriately to coworkers and the public' (id. (citing Tr. 16) (emphasis added)), but "then denied [Plaintiff's] claim at Step 5 of the SEP based upon the testimony of a VE" responding to "a hypothetical that stated [Plaintiff] could 'only occasionally respond and interact with co-workers and the public'" (id. (citing Tr. 55) (emphasis added)). Thus, Plaintiff points out that the

---

[4] (...continued)
review does not proceed to the next step.").

8

"hypothetical did not say that [Plaintiff] could only occasionally respond *appropriately* with co-workers and the public as the ALJ found in his RFC assessment" (id. at 5 (emphasis in original)), and that the ALJ's omission qualifies as "critical[,]" because "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilit[y] on a sustained basis to . . . **respond appropriately to supervision[ and] coworkers**" (id. (quoting Social Security Ruling 85-15, Titles II and XVI: Capability to Do Other Work — the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *4 (1985) ("SSR 85-15")) (emphasis supplied by Plaintiff)). According to Plaintiff, "[o]nly being able to occasionally respond appropriately to coworkers and the public constitutes a 'substantial loss' of the ability to meet this basic work demand" (id. at 6 (quoting SSR 85-15, 1985 WL 56857, at *4, and citing Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *5 (1983) (defining "occasional" as occurring from very little up to one-third of a workday)).) Plaintiff's arguments fall short.

As an initial matter, and as the Commissioner points out, "Plaintiff [does not] explain how the hypothetical and RFC social restrictions differ in any meaningful manner" (Docket Entry 14 at 9), because, "[i]f a worker has to respond and interact at work, the VE is obviously aware that this social functioning must be done

9

*appropriately* for the person to adequately perform the basic requirements of the job" (id. at 10 (citing 20 C.F.R. §§ 404.1522, 416.922) (emphasis supplied by the Commissioner)).

Moreover, a limitation to occasionally responding appropriately to co-workers and the public does not constitute a "substantial loss" of ability to perform that mental work demand, as shown by the definition of "[s]ubstantial loss" in the Program Operations Manual System ("POMS"):

> "Substantial loss" cannot be precisely defined. It does not necessarily relate to any particular adjective, number, or percentage. In practical terms, <u>an individual has a substantial loss of ability to perform a basic mental activity when he or she cannot perform the particular activity in regular, competitive employment but, at best, could do so only in a sheltered work setting where special considerations and attention are provided</u>.

POMS DI 25020.010A.3.b (Mental Limitations), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010) (emphasis added) (last accessed June 8, 2018); see also Wright v. Colvin, No. 1:15-CV-00415(MAT), 2017 WL 6616378, at *4 (W.D.N.Y. Dec. 27, 2017) (unpublished) (dismissing the plaintiff's contention that occasional ability to make work-related decisions amounted to "substantial loss" of such ability under POMS DI 25020.010A.3.b., because that POMS section "expressly notes that '[s]ubstantial loss cannot be precisely defined . . . and . . . does not necessarily relate to any particular adjective, number, or percentage[]' [and t]hus, the adjective 'occasional' does not lead to an automatic finding of

10

disability"). The ALJ clearly did not find in the RFC that Plaintiff could only respond and interact with coworkers and the public "in a sheltered work setting where special considerations and attention are provided," POMS DI 25020.010A.3.b. (See Tr. 15-16.)

Furthermore, the ALJ asked the VE whether jobs existed in significant numbers in the national economy that Plaintiff could perform if limited to, <u>inter alia</u>, occasional response to/interaction with co-workers and the public (see Tr. 54-55), and the VE testified that Plaintiff could perform the jobs of small parts assembler, electronics assembler, and plastic hospital products assembler (see Tr. 55-56).[5] The ALJ adopted the VE's testimony, and found, at step five of the SEP, that Plaintiff could perform those three jobs notwithstanding the limitation to occasional response to/interaction with co-workers and the public. (See Tr. 20.) The VE's testimony thus undermines Plaintiff's contention that the limitation to occasional interaction caused a "substantial loss" in his ability to perform that mental demand and therefore disabled him. See <u>Rogers v. Colvin</u>, No. 3:15-5938-DWC,

---

[5] The codes in the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>") for the three jobs cited by the VE (and adopted by the ALJ at step five of the SEP) contain a fifth digit of "8," <u>DOT</u>, No. 706.684-022 (Assembler, Small Products I), 1991 WL 679050; <u>DOT</u>, No. 726.687-010 (Electronics Worker), 1991 WL 679633; <u>DOT</u>, No. 712.687-010 (Assembler, Plastic Hospital Products), 1991 WL 679245, reflecting the lowest possible level of human interaction that exists in the labor force, see <u>DOT</u>, App'x B (Explanation of Data, People, and Things), 1991 WL 688701. "This designated level of interaction is compatible with an RFC limiting a claimant to only occasional contact with coworkers, supervisors, and the public." <u>Cobb v. Colvin</u>, No. 2:13CV115TCM, 2014 WL 6845850, at *19 (E.D. Mo. Dec. 3, 2014) (unpublished).

11

2016 WL 3344573, at *4 (W.D. Wash. June 15, 2016) (unpublished) (rejecting the plaintiff's argument that she suffered "substantial loss" in ability to perform mental demands of work under POMS DI 25020.010A.3.b., where VE testified that RFC limiting Plaintiff's contact with males and requiring supportive supervisor caused 30% erosion of occupational base, "thereby leaving . . . 70% of jobs existing in the national economy available to [the p]laintiff"); McPeters v. Astrue, No. CIV.A.1:07-CV-0112-C, 2008 WL 4414542, at *11 (N.D. Tex. Sept. 30, 2008) (unpublished) (holding that RFC with restrictions to "one- and two-step work instructions and . . . only incidental contact with the public and no collaboration with co-workers" did "not encompass findings indicating that [the p]laintiff ha[d] experienced a substantial loss in the ability to perform the basic mental demands of unskilled work[,]" where VE testified that individual with those limitations could still perform jobs in the national economy).

In sum, Plaintiff's first assignment of error entitles him to no relief.

## 2. Opinion Evidence

Next, Plaintiff maintains that "[t]he ALJ erred in his assessment of the medical opinion evidence." (Docket Entry 12 at 7 (bold font omitted).) In particular, Plaintiff argues that "[t]he ALJ did not address how each of [consultative examiner Dr. Kimberly A. Kirkland's] opined limitations were weighed in [the

12

ALJ's] decision and why he accepted or rejected them[,] . . . [but instead] only stated that [Dr. Kirkland's opinion] 'deserve[d] some weight[,]'" which "[wa]s too vague to be useful in tracking the ALJ's logic." (Id. at 9 (citing Tr. 18).) Additionally, Plaintiff asserts that, "[d]espite giving [consultative examiner Dr. J. Craig Hunt's] opinion 'substantial weight' (id. (citing Tr. 18)), . . . the ALJ included no limitation for appropriate interactions with supervisor in his RFC, and Dr. Hunt felt [Plaintiff] would be moderately to markedly limited in this area" (id. (citing Tr. 15-16) (internal citation omitted)). In one critical respect, Plaintiff's contentions have merit.

Consultative examiners do not constitute treating sources under the regulations, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and thus their opinions, as a general proposition, do not warrant controlling weight, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.). However, the ALJ must nevertheless evaluate consultative opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, [the ALJ] will evaluate every medical opinion [he or she] receive[s]" and where an opinion does not warrant controlling weight, [the ALJ must] consider all of

13

the . . . factors [in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6)] in deciding the weight [to] give to <u>any</u> medical opinion." (emphasis added)); Social Security Ruling 96-5p, <u>Medical Source Opinions on Issues Reserved to the Commissioner</u>, 1996 WL 374183, at *5 (July 2, 1996) ("SSR 96-5p") (noting that ALJs "<u>must</u> weigh medical source statements . . . [and] provid[e] appropriate explanations for accepting or rejecting such opinions" (emphasis added)).

On November 12, 2013, Dr. Kirkland conducted a consultative psychological examination of Plaintiff (Tr. 346-51), reporting Plaintiff's diagnoses as major depressive disorder, likely recurrent, severe, without psychotic features; pain disorder associated with both psychological features and a general medical condition; and mild intellectual disability (provisional diagnosis) (<u>see</u> Tr. 350-51), which caused symptoms of "depressed mood, loss of interest in pleasurable activities, lethargy, hopelessness, and insomnia" (Tr. 351). As a result of those impairments, Dr. Kirkland concluded as follows:

> Regarding [Plaintiff's] ability to work, given his current level of emotional disturbance, [he] would likely be unable to relate appropriately to fellow workers and supervisors; it is also unlikely that he could tolerate the day-to-day stress and pressure associated with daily work activity. His reported pain level would likely interfere with his work functioning. [Plaintiff] appears

14

> to have difficulty understanding, retaining, and following instructions. He cannot sustain concentration and lacks mental ability to perform simple repetitive tasks.

(Tr. 351.)

The ALJ recited all but the last sentence of the above-quoted portion of Dr. Kirkland's evaluation (see Tr. 18), and then concluded that Dr. Kirkland's "opinion deserve[d] some weight because Dr. Hunt's opinion [wa]s more persuasive" (id.). Plaintiff argues that "[t]he ALJ did not address how each of [Dr. Kirkland's] opined limitations were weighed in [the ALJ's] decision and why he accepted or rejected them[,] . . . [but instead] only stated that [Dr. Kirkland's opinion] 'deserve[d] some weight[,]'" which "[wa]s too vague to be useful in tracking the ALJ's logic." (Docket Entry 12 at 9 (emphasis added) (citing Tr. 18).)

As an initial matter, the Court can meaningfully review "how each of [Dr. Kirkland's] opined limitations were weighed in [the ALJ's] decision" (id. (emphasis added)). Comparison of the mental RFC adopted by the ALJ with Dr. Kirkland's opinions makes clear the ALJ partially credited most of Dr. Kirkland's opinions, but rejected her opinion that Plaintiff could not "sustain concentration and lack[ed] [the] mental ability to perform simple repetitive tasks" (Tr. 351). (Compare Tr. 15-16, with Tr. 351.) For example, as the ALJ gave "some weight" (Tr. 18) to Dr. Kirkland's opinion that Plaintiff "would likely be unable to relate appropriately to fellow workers and supervisors" (Tr. 351), the ALJ

15

included in the RFC that Plaintiff could "occasionally respond appropriately to coworkers and the public" (Tr. 16).[6] Similarly, the ALJ partially credited Dr. Kirkland's opinion that Plaintiff likely could not "tolerate the day-to-day stress and pressure associated with daily work activity" (Tr. 351) by precluding "production rate pace" jobs and restricting Plaintiff to "simple, work-related decisions" (Tr. 15-16). Further, to accommodate, in part, Dr. Kirkland's opinion that Plaintiff "appear[ed] to have difficulty understanding, retaining, and following instructions (Tr. 351), the ALJ limited Plaintiff to simple, routine, repetitive tasks ("SRRTs") (Tr. 15).

However, the ALJ did not explain <u>why</u> he discounted Dr. Kirkland's opinions as less persuasive than those of Dr. Hunt. The ALJ did not discuss any of Dr. Kirkland's findings on examination in his decision (<u>see</u> Tr. 16-19), merely recited Dr. Kirkland's opinions without comment, and provided no rationale at all for

---

[6] Although the ALJ did not include in the RFC or hypothetical question any specific restrictions on Plaintiff's interaction with <u>supervisors</u> (<u>see</u> Tr. 15-16, 54-56), as discussed above, the <u>DOT</u> codes for the three jobs cited by the VE (and adopted by the ALJ at step five of the SEP) contain a fifth digit of "8," <u>DOT</u>, No. 706.684-022 (Assembler, Small Products I), 1991 WL 679050; <u>DOT</u>, No. 726.687-010 (Electronics Worker), 1991 WL 679633; <u>DOT</u>, No. 712.687-010 (Assembler, Plastic Hospital Products), 1991 WL 679245, reflecting the lowest possible level of human interaction that exists in the labor force, including (as concerns supervisors) "[a]ttending to the work assignment instructions or orders of [a] supervisor . . . <u>[with n]o immediate response required unless clarification of instructions or orders is needed</u>," <u>see</u> <u>DOT</u>, App'x B (Explanation of Data, People, and Things), 1991 WL 688701 (emphasis added). "This designated level of interaction is compatible with an RFC limiting a claimant to only occasional contact with coworkers, <u>supervisors</u>, and the public." <u>Cobb</u>, 2014 WL 6845850, at *19 (emphasis added).

16

finding those opinions less persuasive than Dr. Hunt's opinions (see Tr. 18).

Moreover, the ALJ's analysis of Dr. Hunt's opinions also does not elucidate why the ALJ found Dr. Hunt's opinions more persuasive than those of Dr. Kirkland. (See id.) On September 6, 2016, Dr. Hunt completed a consultative psychological examination of Plaintiff (Tr. 437-42), reporting Plaintiff's diagnoses as major depressive disorder, recurrent, moderate to severe; generalized anxiety disorder with panic; mild cannabis use disorder; rule out mild alcohol use disorder; and rule out borderline intellectual functioning (Tr. 441). Dr. Hunt offered the following opinions:

> [Plaintiff] appears to have the intellectual capacity to perform [SRRTs] . . . . He demonstrated marginal to poor interpersonal behavior and <u>could</u> have moderate to marked difficulty interacting effectively with peers, coworkers, and supervisors . . . . He could have moderate to marked difficulty tolerating the stress associated with day-to-day work activity . . . . [H]e appears capable of conforming to social standards and complying with rules and regulations, as well as, cooperating with authority figures.

(Tr. 442 (emphasis added).)

As with Dr. Kirkland's opinions, the ALJ failed to discuss any of Dr. Hunt's examination findings in his decision (see Tr. 16-19), and merely recited, without comment, all but the last sentence of the above-quoted portion of Dr. Hunt's evaluation (see Tr. 18). The ALJ then concluded that Dr. Hunt's "opinion deserve[d] substantial weight <u>because it was based on a single evaluation of [Plaintiff,]</u>" and because "<u>Dr. Hunt cautioned that his conclusions</u>

17

were 'offered with mild to moderate reservations' due to [Plaintiff's] 'possibly evasive' responses during the evaluation." (Id. (emphasis added) (quoting Tr. 441).) However, both of the ALJ's stated rationales for affording Dr. Hunt's opinions "substantial weight" constitute non sequiturs (id.), as a medical source's one-time evaluation and reservations regarding his or her own opinions would typically qualify as reasons for affording less weight to that source's opinions, see, e.g., McKenzie v. Colvin, No. CIV. TMD 13-1026, 2014 WL 3955588, at *11 (D. Md. Aug. 12, 2014) (unpublished) (holding that "the ALJ reasonably discounted the opinion of [a physician] as a one-time consultative examiner"); Courtney v. Colvin, No. 11-CV-176-WMC, 2014 WL 218219, at *5 (W.D. Wis. Jan. 21, 2014) (unpublished) (finding that ALJ provided "good reason" for discounting occupational therapist's opinion where therapist "openly acknowledged that she may not have obtained an accurate representation of the [claimant's] functioning").

The Commissioner argues that "[s]ubstantial evidence supports the ALJ's finding that Dr. Hunt's opinion was more persuasive than Dr. Kirkland's opinion." (Docket Entry 14 at 14.) In support of that argument, the Commissioner contends that "Dr. Hunt's evaluation was supported with more comprehensive testing and reporting than that of Dr. Kirkland[,] Dr. Hunt's evaluation was three years after Dr. Kirkland's mental assessment and included a review of Dr. Kirkland's report[,] . . . Dr. Hunt's testing of

18

Plaintiff and report were more detailed than those of Dr. Kirkland[,] Dr. Kirkland acknowledged that her testing was incomplete and that Plaintiff appeared to exaggerate his symptoms[,] . . . [and] Dr. Hunt completed a medical source statement [but] Dr. Kirkland did not." (Id. at 14-15 (citing Tr. 346, 349-50, 351, 437, 439-41, 441-42, 445-47) (internal citations omitted).)

Significantly, however, the ALJ in this case did not endorse any of the Commissioner's rationales in assigning Dr. Kirkland's opinions less weight than Dr. Hunt's opinions. (See Tr. 18.) The Court may not consider such post-hoc rationalizations for the ALJ's decision-making. See Radford v. Colvin, 734 F.3d 288, 294 (4th Cir. 2013) (rejecting Commissioner's argument in part because it consisted of "a post[-]hoc rationalization") (citing Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012)); Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not post hoc rationalizations that attempt to intuit what the [ALJ] may have been thinking.") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); Alexander v. Colvin, Civil Action No. 9:14-2194-MGL-BM, 2015 WL 2399846, at *6 (D.S.C. May 19, 2015) (unpublished) (rejecting Commissioner's

19

argument as "only a post hoc rationalization for upholding the decision, since that is not actually what the ALJ did").

In sum, Petitioner has demonstrated grounds for remand arising from the ALJ's evaluation of the opinions of Drs. Kirkland and Hunt.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, to include reevaluation of the opinions of Drs. Kirkland and Hunt in accordance with 20 C.F.R. §§ 404.1527, 416.927, SSR 96-5p, and other applicable authority.  As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) should be granted in part (i.e., to the extent it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) should be denied.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

June 15, 2018